767 S.E.2d 203

**Stephen George BROCK, Appellant,**

v.

**TOWN OF MOUNT PLEASANT, Respondent.**

Appellate Case No. 2012–208787.

No. 5279.

Court of Appeals of South Carolina.

Heard Sept. 8, 2014.

Decided Nov. 5, 2014.

Rehearing Denied Jan. 23, 2015.

108

Robert Clyde Childs, III, of Childs Law Firm, and J. Falkner Wilkes, both of Greenville, for Appellant.

Jessica Sara Jubick and James J. Hinchey, Jr., both of Hinchey Murray & Pagliarini, LLC, of Charleston, for Respondent.

CURETON, A.J.

Stephen Brock sued the Town of Mount Pleasant (the Town) under South Carolina's Freedom of Information Act (FOIA) and Public Records Retention Act (RRA), requesting declaratory judgments and injunctive relief relating to how the Town conducted its meetings and kept its records. The trial court granted the requested relief as to some issues and awarded Brock $42,000.00 in attorney's fees and costs. Brock appeals, arguing the trial court erred in failing to: (1) find the Town violated FOIA when it took action on matters without giving the public proper notice; (2) find the Town violated FOIA when its announcements of executive sessions violated FOIA's specific purpose provision; (3) find the Town violated RRA by deleting e-mails; and (4) award the full amount of requested attorney's fees and costs. We affirm in part, reverse in part, and remand.

## I. FACTS

In 2007, Mark Mason, an attorney in the Town, owned the "O.K. Tire Store property" (O.K. Tire Store), a large piece of property that included access to Shem Creek. The Town was very interested in obtaining the property and in the summer and fall of 2007, negotiations between the Town's town council (Town Council) and Mason increased. According to Mac Burdette,[1] the Town's administrator, the property was publicly discussed in Town Council's committee and council meetings, the topic "was written about many times in the *Post & Courier*, as well as [discussed on] television media," and a proposed six million dollar purchase price was quoted "many times" during the summer and fall of 2007. After Mason rejected Town Council's first offer, the parties commenced litigation.[2] That litigation, Town Council's eventual purchase of the property for six million dollars, and Brock's position on Town Council's planning commission [3] during that time led to the series of meetings at issue in this case.[4]

Town Council's entire "meeting notice" for its November 13, 2007 meeting (November 13 meeting) stated:

I. *EXECUTIVE SESSION*

    A.  Legal and Contractual Matters pertaining to properties near Shem Creek

    B.  Personnel Matters—Appointments to Boards & Commissions

        1.  Workforce Housing Advisory Committee

        2.  Pride Committee

        3.  Accommodations Tax Advisory Committee

---

1.  "Mac" Burdette is also referred to as "Robert" Burdette.

2.  "O.K. Tire property litigation" and "Shem Creek property" are used interchangeably throughout the record to refer to the same piece of property and legal action.

3.  Prior to filing his complaint, Brock was the general manager of a local news station in the Town and the chairman of Town Council's planning commission. In 2007, Town Council asked Brock to resign as chairman of the commission.

4.  All three contested meetings were special meetings.

Once the mayor called the meeting to order, Burdette "indicated staff would like to ask Council to go into executive session to discuss legal and contractual matters pertaining to properties near Shem Creek and to also discuss personnel matters pertaining to appointments to Boards and Commissions." Thereafter, Town Council passed "a motion to amend the agenda to add ... legal advice pertaining to an opinion from the Attorney General concerning the Planning Commission" and adjourned into executive session. Upon reconvening, the mayor indicated no actions or votes were taken during the executive session, and Town Council approved the following actions: "to direct the Town Attorney to move forward with the discussions as discussed in executive session pertaining to a piece of property on Shem Creek"; and "to authorize the Mayor and members of Council to obtain their individual attorneys for all lawsuits now and in the future with all fee statements to be reviewed by the Town Attorney." The Town's attorney clarified item two "relate[d] to all lawsuits related to Town business."

Town Council's "meeting notice" for its November 16, 2007 meeting (November 16 meeting) only included one item, stating:

I. EXECUTIVE SESSION
   A. Legal Advice pertaining to OK Tire property litigation
II. Adjourn

Once the mayor called the meeting to order, Burdette "asked that Council amend the agenda to include personnel matters pertaining to the Clerk of Council." Town Council passed "a motion to amend the agenda as stated by" Burdette and "a motion to amend the agenda to add personnel matters relating to the Boards and Commissions." Thereafter, the mayor "indicated a motion was needed to adjourn into executive session regarding legal advice pertaining to the OK Tire property litigation and to discuss other personnel matters as mentioned," and the Town's attorney "clarified that this was an executive session regarding all three matters mentioned." Town Council then adjourned into executive session and upon reconvening, the mayor indicated no actions or votes were taken during the executive session. Subsequently, Town

Council approved the following actions: "to adjust the position requirements and compensation for the Clerk of Council as discussed in executive session"; "to reject the offer that was tendered in reference to the Shem Creek property and OK Tire Store property litigation"; and "to authorize the attorney to prepare a letter as discussed in executive session in reference to the personnel actions regarding boards and commissions." [5]

The "agenda" for the December 5, 2007 meeting (December 5 meeting) stated in pertinent part:

IV. APPROVAL OF AGENDA

. . .

VII. CORRESPONDENCE AND PUBLIC STATEMENTS [6]

. . .

XII. NEW BUSINESS—Council

. . .

   H. *EXECUTIVE SESSION*

     (1) **Legal Advice** pertaining to Mathis Ferry Road Project (DEPAUL) relative to PBS & J

     (2) **Legal Advice** pertaining to an EEOC complaint relative to a firefighter applicant (Personnel matter)

     [ (3) ] **Personnel Matters** pertaining to (1) Personnel action regarding the Planning Commission; and (2) Appointment to Boards & Commissions

Shortly after the meeting began, Town Council passed motions "to amend the agenda by adding under Item H Executive Session, an item to receive legal advice pertaining to the OK Tire Store Litigation" and "to amend the agenda by deferring item H.3 under Executive Session, until the January Town Council meeting." During the meeting, after Town Council discussed items I through XII (G), Burdette asked Town Council to adjourn into executive session to discuss

---

**5.** The letter was a letter asking Brock to resign as chairman of the planning commission.

**6.** The meeting minutes reflect Brock signed-in to speak during the public comments portion of the meeting. However, when called to speak, Brock indicated he would "defer his comments."

personnel matters pertaining to appointments to boards and commissions and legal advice regarding a road project, an EEOC complaint, and "the settlement of legal issues and purchase of property know[n] as the OK Tire Store and other properties." The Town's attorney "clarified that this would be legal advice on OK Tire property litigation." Town Council adjourned into executive session and upon reconvening, the mayor indicated no actions or votes were taken during the executive session. Thereafter, Town Council approved, among other actions, the following: "to approve the settlement agreement discussed in executive session pertaining to the OK Tire Store property condemnation lawsuits and authorize Mayor Hallman to execute the agreement" and "authorize the Town Administrator to transfer an additional $3 million into the water access property acquisition project for a total project budget amount of $6 million."

In 2009, Brock filed an amended complaint against the Town arguing, among other things, the Town violated FOIA by: (1) failing to give notice of a proposed action at its December 5 meeting; (2) failing to announce the specific purpose for executive sessions held at its November 13 and November 16 meetings; and (3) participating in illegal communication via e-mail. Additionally, Brock argued the Town violated RRA by routinely destroying and deleting those e-mails. Thereafter, the parties proceeded to trial.

Mason testified he was never informed that any part of the O.K. Tire Store settlement agreement executed on December 6, 2007, was subject to further consideration or ratification by council. Mason maintained he would have given Town Council an additional twenty-four hours to make a decision had Town Council requested an extension. Yet, he admitted he delivered the settlement document to Town Council on December 5, 2007, and required Town Council to sign and return the document by 5:00 p.m. December 6, 2007, or he would have moved forward with the pending property litigation.

At their depositions in 2009, two councilmembers testified all e-mail communication exchanged between councilmembers regarding town business occurred on private e-mail accounts and they regularly deleted those e-mails. The councilmembers confirmed Town Council did not have a retention policy

for e-mails sent to the councilmembers' personal e-mail accounts. In March 2010, the Town signed a resolution adopting "A Policy for Elected Officials' Use of Town Computers and E-mail Accounts" (Computer Policy). The Computer Policy required councilmembers to use computers issued by the Town when communicating with Town employees, officials, constituents or "other persons concerning matters related to Town business" and "[a]ll electronic communications *originating* on an official's Town-provided computer *and* all electronic communication received from sources other than a Town computer, along with all responses made by the official thereto, shall be retained on the computer, unless otherwise directed by the Clerk of Council."

The trial court issued a final order stating: "Regarding Mr. Brock's contentions Town Council violated S.C.Code Ann. § 30–40–80(a) (Notice of meetings of public bodies) on 5 December 2007, when Town Council added an item to the previously posted Town Council meeting agenda, the [trial c]ourt concludes the Town's actions did not violate FOIA." Therefore, the trial court dismissed "Count I of [Brock's] Amended Complaint which claimed the Town violated FOIA by amending Town Council meeting agendas." Further, the trial court found Brock failed to produce sufficient evidence showing the Town violated FOIA by failing to announce the specific purpose of executive sessions at the November 13, November 16, and December 5 meetings. The trial court declined to find the Town violated RRA by Town Council's past actions of deleting e-mails discussing town business, finding the law in that that area is constantly developing, and the Town has since assigned councilmembers laptops and e-mail accounts, and adopted the Computer Policy.

However, the trial court found Brock presented sufficient evidence demonstrating the Town violated FOIA by acts not subject to this appeal and awarded Brock injunctive relief on those issues. The trial court also enjoined Town Council from "deleting, destroying, or otherwise eliminating any Town electronic communications concerning public business except to the extent such destruction is accomplished in accordance with a lawfully established records retention policy." The trial court awarded Brock $42,000.00 in attorney's fees and costs.

Brock filed a Rule 59(e) motion to amend or alter the judgment, arguing the order did not address the issue of whether a matter added to an executive session agenda may be acted upon by a public body after reconvening into open session.[7] Brock maintained the public body could not take action on such matters without prior notice to the public. The trial court amended its order to include a finding that FOIA does not prohibit a public body from acting on items added to an agenda for executive session upon reconvening to open session. This appeal followed.

## II. ISSUES ON APPEAL

1. Did the trial court err in failing to find the Town violated FOIA when it took action on matters without giving the public proper notice?
2. Did the trial court err in failing to find the Town violated FOIA when its announcements of executive sessions violated FOIA's specific purpose provision?
3. Did the trial court err in failing to find the Town violated the RRA by destroying e-mails?
4. Did the trial court err in failing to award attorney's fees and costs?

## III. STANDARD OF REVIEW

"Declaratory judgments in and of themselves are neither legal nor equitable." *Campbell v. Marion Cnty. Hosp. Dist.*, 354 S.C. 274, 279, 580 S.E.2d 163, 165 (Ct.App.2003). "The standard of review for a declaratory judgment action is therefore determined by the nature of the underlying issue." *Wiedemann v. Town of Hilton Head Island*, 344 S.C. 233, 236, 542 S.E.2d 752, 753 (Ct.App.2001). "Actions for injunctive relief are equitable in nature." *Grosshuesch v. Cramer*, 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005). "In equitable actions, an appellate court may review the record and make findings of fact in accordance with its own view of the preponderance of the evidence." *Denman v. City of Columbia*, 387 S.C. 131, 140, 691 S.E.2d 465, 470 (2010). "An injunction is a drastic remedy issued by the court in its discretion to prevent irrepa-

---

7. By amending its agendas for executive session, Town Council effectively amended the required agendas for special meetings.

rable harm suffered by the plaintiff." *Id.* at 140–41, 691 S.E.2d at 470 (quotation marks and citation omitted).

## IV. PUBLIC NOTICE

Relying in part on *Lambries I*,[8] Brock argues the trial court erred in failing to find the Town violated the notice provisions of FOIA when Town Council took action on matters not properly noticed to the public and press. Specifically, Brock maintains: (1) "unnoticed actions [of] December 5, November 13, and November 16, 2007[,] violated the agenda notice provision of section 30–4–80 of FOIA"; (2) "liability of a public body for violations of FOIA is not excused by subsequent actions to resolve actions undertaken during those meetings"; (3) "the December 5th action failed to qualify as a recognized exception to FOIA's notice requirement pursuant to section 30–4–80"; (4) he demonstrated Town Council's pattern of "similar acts of actions without notice"; and (5) he was entitled to a finding that the Town repeatedly violated FOIA's notice provisions. Brock maintains the trial court erred in ruling Town Council's actions at the December 5 meeting were ratified by its actions at a December 17, 2007 meeting based on *Multimedia*.[9] Brock asserts *Multimedia* is no longer applicable because the ratification provisions relied on in *Multimedia* were removed from FOIA. Therefore, according to Brock, the trial court's reliance on *Multimedia* and *Herald*[10] supporting ratification "to erase the FOIA violation" was in error.

▮▮▮▮ FOIA was enacted based on the General Assembly's finding "that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in

---

8. *Lambries v. Saluda Cnty. Council,* 398 S.C. 501, 505, 728 S.E.2d 488, 490 (Ct.App.2012) (*Lambries I*). In *Lambries v. Saluda Cnty. Council,* 409 S.C. 1, 760 S.E.2d 785 (2014) (*Lambries II*), our supreme court reversed *Lambries I*.

9. *Multimedia, Inc. v. Greenville Airport Comm'n,* 287 S.C. 521, 339 S.E.2d 884 (Ct.App.1986).

10. *Herald Pub. Co. v. Barnwell,* 291 S.C. 4, 351 S.E.2d 878 (Ct.App. 1986).

the formulation of public policy." S.C.Code Ann. § 30–4–15 (2007). Accordingly, FOIA's essential purpose is to protect the public from secret government activity. *Bellamy v. Brown,* 305 S.C. 291, 295, 408 S.E.2d 219, 221 (1991). Because FOIA is remedial in nature, it should be liberally construed to carry out the purpose mandated by the legislature. *Campbell,* 354 S.C. at 281, 580 S.E.2d at 166.

Section 30–4–80(a) of the South Carolina Code (2007) distinguishes between the notice requirements for regular, special, and emergency meetings of public bodies. The statute provides the notice for regular meetings "must include the dates, times, and places of such meetings. Agenda, if any, for regularly scheduled meetings must be posted on a bulletin board at the office or meeting place of the public body at least twenty-four hours prior to such meetings." *Id.* For special meetings, the statute provides: "public bodies must post on such bulletin board public notice for any called, special, or rescheduled meetings. Such notice must be posted as early as is practicable but not later than twenty-four hours before the meeting. The notice must include the agenda, date, time, and place of the meeting." *Id.* Finally, the statute states, "This requirement does not apply to emergency meetings of public bodies." *Id.* Further, the term "agenda" is not defined in FOIA. *See* S.C.Code Ann. § 30–4–20 (2007); *Lambries II,* 409 S.C. at 12, 760 S.E.2d at 790 (stating "agenda (which is undefined in FOIA)" (quotation marks and citation omitted)).

In *Lambries I,* 398 S.C. at 505–06, 728 S.E.2d at 490–91, this court decided a published agenda for a regularly scheduled meeting could not be amended during the meeting without violating FOIA. Recently, however, our supreme court in *Lambries II,* 409 S.C. at 18, 760 S.E.2d at 794, reversed *Lambries I* and held: "In the absence of such a legislative directive here, we decline to judicially impose a restriction on the amendment of an agenda for a regularly scheduled meeting, especially when it is clear that no agenda is required at all." Further, the *Lambries II* court stated, "We find this is also the better public policy in light of the fact that a violation of FOIA can carry a criminal penalty, and we note this Court has previously declined to impose restrictions that are not expressly provided by the General Assembly in FOIA." *Id.*

Although FOIA declares the public's right to attend all meetings of public bodies, it also provides for executive sessions, closed to the public for any of six specific purposes. S.C.Code Ann. § 30-4-70(a) (2007). A public body may hold a closed meeting for one or more of the following reasons:

(1) Discussion of employment, appointment, compensation, promotion, demotion, discipline, or release of an employee, a student, or a person regulated by a public body or the appointment of a person to a public body. . . .

(2) Discussion of negotiations incident to proposed contractual arrangements and proposed sale or purchase of property, the receipt of legal advice where the legal advice relates to a pending, threatened, or potential claim or other matters covered by the attorney-client privilege, settlement of legal claims, or the position of the public agency in other adversary situations involving the assertion against the agency of a claim.

. . .

(5) Discussion of matters relating to the proposed location, expansion, or the provision of services encouraging location or expansion of industries or other businesses in the area served by the public body.

*Id.*

FOIA "originally allowed formal action to be taken in executive session if the action was later ratified in public." *Piedmont Pub. Serv. Dist. v. Cowart,* 319 S.C. 124, 129, 459 S.E.2d 876, 878 (Ct.App.1995), *aff'd,* 324 S.C. 239, 478 S.E.2d 836 (1996). "However, the 1987 amendments to [FOIA] deleted the language allowing ratification of votes taken in executive session and specifically prohibited voting while in executive session." *Id.* "By affirmatively deleting the ratification language, the legislature made its intent clear. Ratification no longer validates a vote cast during an executive session." *Id.* at 129, 459 S.E.2d at 879.

■ As an initial matter, we find Brock's arguments regarding the trial court's rulings on: the applicability of *Multimedia, Herald,* and ratification provisions; exemptions to FOIA's provisions; and the alleged repeated FOIA violations are not preserved. While Brock's Rule 59(e) motion and reply to the Town's return outlined these issues, Brock chose not to

make these arguments during the motion hearing. Instead, Brock limited his argument to one issue—paragraph C of the motion—stating his sole issue was the order did not include "a specific ruling on . . . whether voting on matters added to an agenda without notice to the public constitutes a violation of the notice provision of section[ ] 30-4-8[0]." Importantly, the trial court's supplemental order did not rule on the other issues. Accordingly, because those arguments on appeal were not presented to nor ruled upon by the trial court, we do not need to address them. *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("The losing party must first try to convince the lower court it . . . has ruled wrongly and then, if that effort fails, convince the appellate court that the lower court erred."). Therefore, the only argument left for this court to consider is whether the trial court erred in finding FOIA does not prohibit a public body from acting on items added to a special meeting agenda upon reconvening to open session.

■ To the extent Brock's notice issue is preserved, section 30-4-80 does not support his position. That section requires public bodies to post agendas for special meetings twenty-four hours before the meetings; however, it does not specifically require the agenda to include what action the public bodies plan to take. *See* § 30-4-80 ("All public bodies must post on such bulletin board public notice for any called, special, or rescheduled meetings. Such notice must be posted as early as is practicable but not later than twenty-four hours before the meeting. The notice must include the agenda, date, time, and place of the meeting."). In fact, Brock points to no provision in the statutory language of FOIA which states the public body must include the exact action it plans to take on a meeting agenda. *See Lambries II,* 409 S.C. at 12, 760 S.E.2d at 790 (stating "agenda (which is undefined in FOIA)" (quotation marks and citation omitted)). Brock conceded Town Council regularly posted an agenda at least twenty-four hours before each regular and special meeting. As the trial court noted, Town Council could not have known what action it would take—to include on an agenda—prior to discussing the relative legal issues and personnel matters during executive session. From the posted and amended agendas, the public and press had notice Town Council desired to confer with its

attorney in closed session regarding certain matters and may take some action upon reconvening to open session. Brock is not appealing the trial court's finding that Town Council did not violate FOIA by amending its agendas,[11] and once those agendas were amended, it seems Town Council could certainly act on the agenda items upon reconvening to public session.

Furthermore, as the Town correctly points out, FOIA does not mandate an agenda for executive sessions. *See Herald,* 291 S.C. at 11, 351 S.E.2d at 883 ("The Act does not require that an agenda for an executive session be posted or that the news media be notified of the agenda of an executive session."); *id.* ("Practically speaking, it is easily foreseeable that public bodies might not know what will be taken up in executive session until they are meeting in an open session."). To require Town Council to notify the public of the exact actions it plans to take after an executive session seems inapposite to provisions allowing for closed sessions. *See Cooper v. Bales,* 268 S.C. 270, 274–75, 233 S.E.2d 306, 308 (1977) (holding sections of FOIA must be harmoniously construed to preclude disclosure of minutes of executive sessions). Town Council gave the public notice of pending issues, allowed the public to present its comments on the topics, and never took action during executive session. Accordingly, we hold the trial court did not err as to this issue.

## V. SPECIFIC PURPOSE PROVISION

■ Citing *Quality Towing,*[12] Brock argues the trial court erred in finding Town Council's announcements of executive sessions did not violate FOIA's specific purpose provision. We agree the Town failed to announce the specific purpose for its executive session at the November 13 meeting.

---

**11.** Indeed, at the motion for reconsideration hearing, Brock stated:

Let me be clear that I agree absolutely you can add an item [to the agenda] in the executive session. If you want to talk about something there is no harm to the public, in fact it helps the public. It is absolutely in their interest to seek legal advice to discuss contracts or things approved for executive session. This is the meeting after the executive session that I'm referring to. . . . Again, it is about the open meeting following the executive session is the issue.

**12.** *Quality Towing, Inc. v. City of Myrtle Beach,* 345 S.C. 156, 547 S.E.2d 862 (2001).

Section 30–4–70(b) of the South Carolina Code (2007) provides:

Before going into executive session the public agency shall vote in public on the question and when the vote is favorable, the presiding officer shall announce the *specific purpose* of the executive session. As used in this subsection, 'specific purpose' means a description of the matter to be discussed as identified in items (1) through (5) of subsection (a) of this section.

(emphasis added).

In *Quality Towing*, 345 S.C. at 164, 547 S.E.2d at 866, the city council's meeting minutes stated:

C. Towing—Contractual Recommendation

Mayor Grissom advised this matter would be discussed in Executive Session

Upon motion by Councilman Cain, seconded by Councilman Woods, Council voted unanimously to go into executive session.

The *Quality Towing* court held the meeting minutes reflected the city council failed to announce the specific purpose of the executive session. 345 S.C. at 164, 547 S.E.2d at 866.

We find this case is distinguishable from *Quality Towing* with regards to the November 16 and December 5 meetings. Here, unlike *Quality Towing*, Burdette, along with the Town's attorney's clarifications, sufficiently announced the purpose of these two executive sessions when they disclosed exactly what was going to be discussed. *See* § 30–4–70(b) (defining "specific purpose"). Brock maintains Town Council should have been more specific in its announcements. For example, Brock avers Town Council should have stated "settlement offer for O.K. Tire Store" instead of "legal advice pertaining to O.K. Tire Store" or "adjustment of the position requirements and compensation for the clerk of council" instead of "personnel matters related to the clerk of council." We find FOIA does not require such specificity. Accordingly, the trial court did not err in finding the Town did not violate FOIA by failing to state the specific purpose for adjourning into executive sessions at the November 16 and December 5 meetings.

██ However, we find the trial court erred in finding the Town did not violate FOIA by failing to announce the specific purpose of its executive session at its November 13 meeting. Town Council never announced it would discuss whether or not it may retain its own individual attorneys "for all lawsuits now and in the future" relating "to all lawsuits related to Town business" at the public's expense. Moreover, the actions taken were not consistent with the announced purpose. Announcing it would discuss "legal matters" or obtain "legal advice" on a particular issue was an insufficient announcement when Town Council obtained individual attorneys for "all lawsuits now and in the future" as a result of the executive session discussion. Therefore, we reverse the trial court's decision regarding the announcement of Town Council's specific purpose for the executive session at the November 13 meeting.

## VI. PUBLIC RECORDS ACT

Brock argues that while the trial court correctly granted injunctive relief to prevent future occurrences of the destruction of e-mails, it erred in failing to find Town Council's past destruction of e-mails constituted a violation of the RRA. We disagree.

RRA refers to FOIA for its definition of "public record." S.C.Code Ann. § 30-1-10(A) (2007). FOIA defines public record as "all books, papers, maps, photographs, cards, tapes, recordings, or other documentary materials regardless of physical form or characteristics prepared, owned, used, in the possession of, or retained by a public body." S.C.Code Ann. § 30-4-20(c) (2007). RRA provides, "A person who unlawfully removes a public record from the office where it usually is kept or alters, defaces, mutilates, secretes, or destroys it is guilty of a misdemeanor." S.C.Code Ann. § 30-1-30 (2007).

The trial court did not issue a judgment with regard to Town Council's past actions of deleting e-mails, properly finding the law in this area is ever developing and the Town has since adopted the Computer Policy. We find the trial court did not abuse its discretion in declining to issue a declaratory judgment as to this issue.[13] *See S. Ry. Co. v. Order of Ry.*

---

**13.** *See generally Schill v. Wisconsin Rapids Sch. Dist.,* 327 Wis.2d 572, 786 N.W.2d 177, 208 (2010) ("During the last several decades, techno-

*Conductors of Am.*, 210 S.C. 121, 134, 41 S.E.2d 774, 779 (1947) ("It is generally held that the jurisdiction to render a declaratory judgment is discretionary, and should be exercised with great care, and with due regard to all the circumstances of the case.").

## VII. ATTORNEY'S FEES AND COSTS

Brock argues the trial court erred in failing to award the attorney's fees and costs necessary in bringing this action.

Section § 30–4–100 (b) of FOIA provides: "If a person or entity seeking such relief prevails, he or it may be awarded reasonable attorney fees and other costs of litigation. If such person or entity prevails in part, the court may in its discretion award him or it reasonable attorney fees or an appropriate portion thereof." "The award, however, must be reasonable and supported by adequate findings." *Burton v. York Cnty. Sheriff's Dep't*, 358 S.C. 339, 357–58, 594 S.E.2d 888, 898 (Ct.App.2004). "No good faith exception exists for an award of attorney's fees under FOIA." *New York Times Co. v. Spartanburg Cnty. Sch. Dist. No. 7*, 374 S.C. 307, 313, 649 S.E.2d 28, 31 (2007). "Further, on appeal, an award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor." *Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997).

Among the several factors to be weighed by the trial court in setting a reasonable attorney's fee in a FOIA action is the beneficial result accomplished. In view of our holding the Town also violated FOIA by failing to state the specific purpose for its executive session at the November 13 meeting, we remand the issue of attorney's fees for further consideration consistent with this opinion. *See Sloan v. S.C. Dep't of Revenue*, 409 S.C. 551, 555–56, 762 S.E.2d 687, 689 (2014) ("As

---

logical advancements have revolutionized document storage and electronic communication. Prior to these advancements, [a public official's] personal communications ... would not have been subject to disclosure under the public records law.... This fact presents new challenges to record custodians who are required to determine whether particular documents are records subject to disclosure." (Bradley, J., concurring)); Cherie Ballard & Gregory E. Perry, *A Chip by Any Other Name Would Still Be A Potato: The Failure of Law and Its Definitions to Keep Pace with Computer Technology*, 24 Tex. Tech L.Rev. 797, 799 (1993).

the prevailing party under these circumstances, the trial court erred in not awarding Sloan his reasonable attorney's fees and costs. Sloan is entitled to recover his reasonable attorney's fees and costs in this action." (footnote omitted)).

## VIII. CONCLUSION

We affirm the trial court's finding that the Town did not violate section 30–4–80 of FOIA by acting on items added to special meetings agendas upon reconvening to open session. Additionally, we affirm the trial court's finding that the Town did not violate FOIA's specific purpose provision by failing to announce the specific purpose of its executive sessions at the November 16 and December 5 meetings, and its decision not to declare the Town violated RRA by deleting e-mails. However, we reverse the trial court's finding that the Town did not violate the specific purpose provision by failing to announce the specific purpose of its executive session at its November 13 meeting, and remand the attorney's fees issue for further consideration consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and SHORT, JJ., concur.